# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

GERALD ROBERSON,

        Petitioner,

     v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 5:14-cv-50

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Gerald Roberson ("Roberson"), who is currently housed at the Federal Correctional Institution-Low in Yazoo City, Mississippi, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 contesting his sentence obtained in this Court. (Doc. 1.)[1] The Government filed a Motion to Dismiss, (doc. 3), and Roberson filed a Response. (Doc. 8.) The Government filed a Supplement to its initial Response to Roberson's Motion. (Doc. 12.) United States Magistrate Judge James E. Graham conducted an evidentiary hearing on this Motion on January 6, 2015. (Doc. 16.) For the reasons which follow, I **RECOMMEND** the Government's Motion to Dismiss be **GRANTED**, Roberson's Motion be **DISMISSED** in part and **DENIED** in part, and this case be **CLOSED**. I also **RECOMMEND** that Roberson be **DENIED** a Certificate of Appealability and **DENIED** *in forma pauperis* status on appeal.

## BACKGROUND

Roberson was indicted in this Court for conspiracy to possess with intent to distribute and to distribute marijuana, methamphetamine, cocaine, oxycodone, methadone, hydrocodone, and

---

[1] This Order/Report and Recommendation is to be filed in this case as well as in Roberson's original criminal actions, Case Number 5:12-cr-9 and Case Number 5:12-cr-11. Except as otherwise indicated, all record citations will be to Case Number 5:14-cv-50.

valium, in violation of 21 U.S.C. § 846; distribution of methadone, hydrocodone, and valium, in violation of 21 U.S.C. § 841; and use of a communication facility, in violation of 843(b). Indictment, United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. July 11, 2012), ECF No. 3. Roberson was also indicted in this Court for four counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of wire fraud, in violation of 18 U.S.C. § 1343. Indictment, United States v. Roberson, et al., 5:12-cr-11 (S.D. Ga. Aug. 8, 2012), ECF No. 1. Roberson pleaded guilty to a lesser included offense of the conspiracy charge in Case Number 5:12-cr-9 and to one count of mail fraud in Case Number 5:12-cr-11 pursuant to a combined plea agreement for the two cases. See Plea Agreement, United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. Nov. 20, 2012), ECF No. 151, p. 3. In exchange, the Government agreed to dismiss all remaining counts against Roberson in both cases. Id. As part of his combined plea agreement, Roberson agreed to waive his right to collaterally attack his convictions and sentence on any ground, and he waived his right to file a direct appeal, provided the Court did not sentence him above the statutory maximum or above the advisory Guidelines' range. Id. at p. 11. The Honorable Lisa Godbey Wood, Chief Judge, conducted a Rule 11, or change of plea, hearing on November 20, 2012, and accepted Roberson's and the Government's plea agreement. Change of Plea & Plea Agreement, United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. Nov. 20, 2012), ECF Nos. 150, 151. Chief Judge Wood also conducted a sentencing hearing on July 9, 2013, and she sentenced Roberson to 262 months' imprisonment—240 months' imprisonment on the drug conviction and 22 months' imprisonment on the mail fraud count. J., United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. July 15, 2013), ECF No. 188. Roberson did not file a direct appeal.

In his timely-filed Motion, Roberson sets forth several claims of ineffective assistance of counsel. First, Roberson contends his trial counsel, James B. McGee, III, failed to consult with

him about the advantages and disadvantages of filing an appeal. (Doc. 1, p. 4.) Roberson also asserts McGee failed to negotiate a more favorable plea. (Id. at p. 5.) Roberson alleges McGee misadvised him of the consequences of proceeding to trial and convinced Roberson he was facing a sentence of 60 to 72 months' imprisonment if he pleaded guilty. (Id. at pp. 6–7.) Finally, Roberson alleges his plea was not entered into knowingly and voluntarily because McGee provided him with a script to follow during the change of plea hearing. (Id. at p. 8.)

The Government responds that Roberson has failed to show that McGee rendered ineffective assistance of counsel by failing to advise him of the advantages and disadvantages of filing an appeal.[2] (Doc. 12, p. 2.) The Government states Roberson's remaining claims of ineffective assistance are barred by the collateral attack waiver. (Id.) In the alternative, the Government contends Roberson's claims are without merit.

The Court addresses the parties' contentions.

## DISCUSSION

## I.     Roberson's Claims Relating to an Appeal

Roberson avers McGee had an affirmative duty to advise him of the advantages and disadvantages of filing an appeal after this Court entered judgment against him. Roberson asserts McGee was aware of his dissatisfaction with his 262-month sentence, especially in light of McGee's alleged estimate of 60–72 months' imprisonment. (Doc. 1, p. 4.) Roberson contends McGee failed to discuss his appellate rights with him, which led him to believe he did not have those rights. Roberson maintains that, had McGee informed him of the possibility of an appeal, he "would have demanded that an appeal be perfected." (Id. at p. 12.)

---

[2]    The Government initially asserted the collateral attack waiver barred all of Roberson's claims. (Doc. 3.) However, the Government revised its stance slightly in light of a Department of Justice policy that ineffective assistance of counsel claims raising "serious debatable issue[s]" are not barred by these collateral waivers and should be resolved by courts. (Doc. 12, p. 1.)

A defendant can file a direct appeal of his federal conviction as a matter of right. Thompson v. United States, 504 F.3d 1203, 1206–07 (11th Cir. 2007). A "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). The Eleventh Circuit Court of Appeals "has interpreted Flores-Ortega to mean that it is per se unreasonable to fail to follow a client's explicit request to file an appeal." Gomez-Diaz v. United States, 433 F.3d 788, 791–92 (11th Cir. 2005). Even if a client has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.

The denial of counsel on appeal, and more seriously, the denial of an appeal altogether as a result of ineffective assistance of counsel, deprive the accused of counsel at a "critical stage" and therefore carry a presumption of prejudice. Id. at 483. However, "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." Id. at 484. Thus, to invoke the presumption of prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. "When counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. A pro se defendant is not required to show that his appeal has any arguably meritorious grounds for appeal; all that is required is for the "defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." Ashcraft v. Sec'y, Fla. Dep't of Corr., 340 F. App'x 600,

602 (11th Cir. 2009). "The duty to consult includes two obligations: to advise the client 'about the advantages and disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." Baughman v. United States, 319 F. App'x 866, 869 (11th Cir. 2009) (internal citation omitted).

## A.    Failure to File an Appeal

Roberson testified during the evidentiary hearing that the waiver contained in his plea agreement did not waive his right to file a notice of appeal.[3] (Doc. 18, p. 27.) Roberson also testified that he asked McGee after sentencing if there were any grounds for an appeal, and McGee told him he did not believe there were. (Id. at pp. 27–28.) When asked whether he specifically and directly instructed McGee to file a notice of appeal, Roberson testified, "He said, there is nothing we can do. We can't file anything." (Id. at p. 28.) Roberson also testified that McGee appeared to understand he wanted to file an appeal "just from the look on his face." (Id.)

McGee testified that Roberson's plea agreement contained an appeal waiver, which required McGee to forego his right to an appeal if the Court sentenced him with the Guidelines and did not sentence him above those Guidelines or the statutory maximum. (Id. at pp. 7, 10.) McGee also testified that the appeal waiver provision was "the main thing" he and Roberson discussed about the plea agreement. (Id. at p. 8.) McGee stated he did not remember Roberson telling him to file an appeal. (Id. at p. 12.) In addition, McGee declared in a pre-hearing affidavit that Roberson never instructed him to file an appeal. (Doc. 12-1, p. 2, ¶ 8.) McGee stated he and Roberson met after his sentencing to discuss the sentence and related matters, but they did not discuss an appeal as far as he could recall. (Id.)

---

[3] Roberson also testified that he remembered Chief Judge Wood "saying something about an appeal but what sticks out in my mind was she said I had no appeal except for some technical things . . . about going beyond the guidelines or those things." (Doc. 18, p. 27.)

The Court finds the testimony given by McGee during the evidentiary hearing, as well as his declarations given before the evidentiary hearing, more credible than that given by Roberson. Davis v. United States, 404 F. App'x 336, 338 (11th Cir. 2010) (stating that the determination of the credibility of a testifying attorney during an evidentiary hearing on an ineffective assistance claim is within the province of the district court, which has the opportunity to observe and study the witness). McGee has represented numerous parties in this Court since the mid-1990s, including several defendants in criminal prosecutions, and has represented his clients in a professional and forthright manner, whereas Roberson is a convicted felon. In addition, the contentions Roberson makes in his Section 2255 Motion are contradicted by the record before the Court, as discussed in depth in this Report and Recommendation. Furthermore, even if the Court gave credence to Roberson's account, he never states that he specifically directed McGee to file an appeal on his behalf.[4] Thus, the Court finds that Roberson did not tell McGee he wanted to file an appeal. Nevertheless, the Court's inquiry does not stop here. It must be determined whether McGee had a duty to consult with Roberson regarding an appeal.

### B. Failure to Discuss the Advantages and Disadvantages of Filing an Appeal

Roberson asserts that McGee had an "affirmative duty" to advise him of the advantages and disadvantages of filing an appeal. (Doc. 1, p. 4.) Roberson avers McGee did not discuss his appellate rights, which led him to believe he did not have those rights. Roberson contends that, had McGee educated him concerning the possibility of an appeal, he would have demanded that an appeal be filed. (Id. at p. 12.) McGee testified during cross-examination at the evidentiary

---

[4] In this regard, the Court notes Roberson's testimony given at the evidentiary hearing, as recounted previously, to wit: When asked whether he specifically and directly instructed McGee to file a notice of appeal, Roberson testified, "He said, there is nothing we can do. We can't file anything." (Doc. 18, p. 28.) Roberson also testified that McGee appeared to understand he wanted to file an appeal "just from the look on his face." (Id.) This is an insufficient basis for a finding that Roberson specifically instructed McGee to file an appeal on his behalf.

hearing he did not recall counseling Roberson about the advantages and disadvantages of filing an appeal after his sentencing. (Doc. 18, p. 13.)

Roberson and McGee appear to agree that Roberson was not informed of the advantages and disadvantages of filing an appeal. However, the question remains whether McGee had a duty to consult with Roberson about the advantages and disadvantages of filing an appeal. As determined above, Roberson did not inform McGee he wanted to file an appeal. Even if a client has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . ., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480.

There is no credible evidence before the Court that Roberson reasonably demonstrated to counsel that he was interested in appealing. Moreover, there is no evidence that provides a reason to believe Roberson, as a rational defendant, would want to appeal his sentence. Had Roberson proceeded to trial and been convicted—even of only those counts to which he pleaded guilty—he faced a statutory maximum sentence of at least 40 years' imprisonment. Penalty Certification, United States v. Roberson, et al., 5:12-cr-9, (S.D. Ga. July 11, 2012), ECF No. 4; Penalty Certification, United States v. Roberson, et al. 5:12-cr-11, (S.D. Ga. Aug. 8, 2012), ECF No. 2. Instead, Roberson's desire to enter into a plea agreement left him with a sentence of 262 to 327 months' imprisonment, which was considerably less than the minimum sentence of 480 months' imprisonment he faced by statute. Sentencing Hr'g Tr., United States v. Roberson, et al., 5:12-cr-9, (S.D. Ga. Apr. 21, 2014), ECF No. 196, p. 35. Chief Judge Wood sentenced Roberson within the Guidelines range and found no reason to depart from the Guidelines, even

after hearing from several members of Roberson's family and friends at the sentencing hearing. (Id. at pp. 36–56.)   While the Court recognizes that Roberson need not show any potential ground raised on appeal would have been meritorious, Roberson presents nothing other than bare assertions indicating he, as a rational defendant, would have wanted to file an appeal of his sentence.   Roberson is not entitled to his requested relief, and this portion of the Government's Motion to Dismiss should be **GRANTED**.

## II.     Collateral Attack Waiver

The Government maintains that the Roberson's remaining claims are barred from a review on the merits based on the collateral attack waiver contained in his plea agreement.

### A.     Whether the Waiver Bars Movant's Claims

The Government asserts the collateral attack waiver in Roberson's combined plea agreement bars his remaining claims.   The Government alleges Chief Judge Wood discussed the waiver during the plea colloquy, and Roberson "expressly acknowledged" his understanding of the collateral attack waiver.  (Doc. 3, p. 10.)   The Government also alleges Roberson admitted that he and his counsel had gone over the plea agreement "quite extensively[,]" and the record confirms that Roberson understood the significance of the waiver.  (Id.)

It is well-settled that a waiver of appeal[5] provision is enforceable if the waiver is knowing and voluntary.   United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)).   "'To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the

---

[5]  "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.   United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).   Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.   Vaca-Ortiz v. United States, 320 F. Supp.2d 1362, 1365–67 (N.D. Ga. 2004).

record that the defendant fully understood the significance of the waiver.'" United States v. Mottola, 394 F. App'x 567, 568 (11th Cir. 2010) (quoting United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997)). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

Roberson and McGee were able to negotiate a plea agreement with the Government whereby Roberson agreed to plead guilty to Count 1 in Case Number 5:12-cr-9 and to Count 1 in Case Number 5:12-cr-11. A "Limited Waiver of Appeal" was included as part of this combined plea agreement. This section provided:

> To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a § 2255 proceeding, on any ground, except that: the defendant may file a direct appeal of his sentence if it exceeds the statutory maximum and the defendant may file a direct appeal of his sentence if, by variance or upward departure, the sentence is higher than the advisory sentencing guideline range as found by the sentencing court. The defendant understands that this Pleas Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of the sentence.

Plea Agreement, United States v. Roberson, 5:12-cr-9 (S.D. Ga. Nov. 20, 2012), ECF No. 151, p. 11.

Roberson appeared before Chief Judge Wood for his change of plea, or Rule 11, proceeding. Chief Judge Wood addressed Roberson and informed him that he: did not have to plead guilty to either of the indictments; had the constitutional right to maintain a plea of not guilty; had the right to a public and speedy trial by jury with its attendant presumption of innocence; would have the assistance of his attorney throughout that trial; would have the right

to confront the Government's witnesses and to see its evidence; would have the right to call witnesses and present his own evidence; could make the Government bear its burden of proving its case beyond a reasonable doubt; and had the right to not incriminate himself by testifying. Change of Plea Hr'g Tr., United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. Apr. 21, 2014), ECF No. 197, pp. 10–11. Chief Judge Wood then informed Roberson that, if he pleaded guilty and she accepted his plea, he would waive, or give up, all of the rights associated with a trial by jury. (Id. at p. 11.) Roberson advised Chief Judge Wood that he and McGee had discussed the indictments against him, and that McGee had discussed the plea agreement "in depth." (Id. at p. 12.) Roberson told Chief Judge Wood he and McGee discussed the Sentencing Guidelines "quite a lot[ ]" and that he had "several days to spend with the Government's guide." (Id.) Roberson also told Chief Judge Wood that McGee's representation had been "excellent[,]" and he had no complaints whatsoever. (Id. at p. 13.) Even though Roberson and McGee had gone over the indictments, Chief Judge Wood nevertheless reviewed the charges of the indictments, (id. at pp. 13–17), and the essential elements of the crimes for which he was charged the Government would have to prove. (Id. at pp. 17–18.) Chief Judge Wood advised Roberson, "Now, the maximum possible penalty that I could ever impose for a violation of those offenses by statute as to the drug offense, Count 1 in 5:12-009, [is] not more than 20 years['] imprisonment, a fine of not more than 1 million dollars, at least three years['] supervised release, and a $100 special assessment. As to the second indictment, 5:12-11, in the mail fraud charge set forth in Count 1, not more than 20 years['] imprisonment, a fine of not more than $250,000, not more than 3 years['] supervised release, and a $100 special assessment." (Id. at p. 19.) Chief Judge Wood asked Roberson if he understood the maximum penalties that could be imposed, clarifying that Roberson could be sentenced to up to 40 years' imprisonment by statute, and he

stated he did. (Id.) Chief Judge Wood then advised Roberson that the advisory Sentencing Guidelines provide for a range for his sentence, and these Guidelines allow for certain factors, such as his conduct and role in the crimes to which he was pleading guilty, his criminal history, and his acceptance of responsibility. (Id. at pp. 20–21.) Roberson indicated his understanding of these matters "as well as a layman could." (Id. at p. 21.) Chief Judge Wood inquired whether anyone had promised him an exact sentence, and Roberson said no one had. Chief Judge Wood stated, "That is good because that would be inappropriate. At this point, all anybody can do is give you their best estimate about what your guideline range might be but that estimate would in no way be binding upon the court[.]" (Id.)

In addition, Chief Judge Wood asked the prosecution Assistant United States Attorney ("ASUA") to summarize the provisions of the plea agreement. AUSA Charlie Bourne stated:

> The Defendant agrees to plead guilty to the lesser included offense of Count 1 of Indictment 5:12-09 and Count 1 of Indictment 5:12-11. The Defendant agrees to acknowledge at the time of the plea the truth of the factual basis contained in the plea agreement. Defendant consents to the limited appeal waiver described in the plea agreement. He agrees to pay on the date of sentencing any assessments imposed by the Court and he agrees to provide full, complete, and candid cooperation whenever called upon to do so. In exchange, the Government will not object to a recommendation from the probation officer that the Defendant receive a reduction for acceptance of responsibility. The Government will dismiss the remaining charges in both indictments against this Defendant. The Government will recommend that the relevant conduct attributable to this Defendant in Indictment 5:12-11 be limited to the loss associated with the Folks Circle Blackshear property and the Tennessee truck loss. The Government agrees to consider whether the Defendant's cooperation with the Government qualifies as substantial assistance and warrants the filing of either a motion for downward departure or a motion to reduce sentence. That is the extent of the plea agreement, Your Honor.

(Id. at pp. 22–23.) Chief Judge Wood asked Roberson if the Government's summarization were consistent with the agreement he signed, and he said it was. Roberson also said he read the plea

11

agreement "[s]everal times[ ]" before he signed it, and that he and McGee went over the agreement "quite extensively." (Id. at p. 23.) Chief Judge Wood then addressed Roberson:

> It is my obligation to point out to you one provision that is included in this plea agreement that you are urging me to accept. On page 11 of your plea agreement, it contemplates a waiver of appeal. It states, to the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal the conviction and sentence and the right to collaterally attack the sentence in any post-conviction proceeding, including a section 2255 proceeding. There are, however, three exceptions to that waiver of appeal included in your proposed plea agreement. That is, you would get back a direct appeal right only if one of these three things were to occur. Number one, if the Government were to file a direct appeal then you could, in that case, file a direct appeal. Number two, if I were to sentence you above the advisory guideline range as found by me then you would get a direct appeal right back, or number three, if I were to sentence you above the statutory maximum then you would get a direct appeal right back. Other than those three situations, however, by virtue of this plea agreement you waive any appellate rights that you would have had.

(Id. at pp. 23–24.) Roberson told Chief Judge Wood he understood this provision and did not have any questions about it. (Id. at p. 24.)

Chief Judge Wood then asked Roberson whether he still wished to plead guilty to Count 1 of both of the indictments because he was in fact guilty of both of the counts, and he said he did. (Id. at p. 25.) Chief Judge Wood also asked whether Roberson understood the rights and privileges he was waiving by pleading guilty, and he answered in the affirmative. (Id.) Chief Judge Wood determined Roberson's plea in both cases was "knowing, intelligent, and voluntary[.]" (Id. at p. 26.) Roberson agreed. The Government then provided a factual basis for Roberson's plea of guilty. (Id. at pp. 26–30.) After hearing from Roberson again and then advising Roberson he was pleading guilty to two felonies, which results in the loss of certain of his civil rights, Chief Judge Wood inquired whether Roberson still wished to plead guilty to both counts; he stated he did. (Id. at p. 31.) Chief Judge Wood accepted Roberson's plea and adjudged him guilty of Count 1 of criminal indictment 5:12-009 and Count 1 of criminal

indictment 5:12-11. Chief Judge Wood informed Roberson the probation office would conduct a presentence investigation and issue a presentence investigation report ("PSI"), which would be disclosed to the defense and the Government, and that a sentencing hearing would be scheduled. (Id. at pp. 31–32.)

At the sentencing hearing, McGee raised objections to certain aspects of the PSI, most notably to the drug quantity attributed to Roberson. Sentencing Hr'g Tr., United States v. Roberson, et al., 5:12-cr-9, (S.D. Ga. Apr. 21, 2014), ECF No. 196, pp. 3–5. After listening to the Government's witness' testimony and clarifying McGee's objection, Chief Judge Wood overruled in part and sustained in part the objection. (Id. at pp. 5–20.) Chief Judge Wood also heard testimony regarding the conspiracy allegation and Roberson's role therein, to which McGee also objected. (Id. at pp. 24–30.) Chief Judge Wood overruled this objection and specifically found, by a preponderance of the evidence, that, given Roberson's role in the conspiracy, the four-point adjustment was "earned[.]" (Id. at p. 30.) Chief Judge Wood found Roberson's total offense level was 39, and he had a criminal history category of I, which resulted in a Guidelines' range of 262 to 327 months of imprisonment. (Id. at p. 35.) Chief Judge Wood considered the PSI and the addendum thereto, the testimony of all of the witnesses during the sentencing hearing, the arguments which were made, and the sentencing factors set forth in 18 U.S.C. § 3553 before pronouncing Roberson's 262-month sentence, which was comprised of 240 months' imprisonment on the drug count and 22 months' imprisonment at to the mail fraud count. (Id. at pp. 60–62.)

The record clearly indicates that Roberson understood the implications of entering a guilty plea, as well as the meaning of the waiver condition. In addition, Chief Judge Wood specifically questioned Roberson about this condition during the Rule 11 hearing. Mottola, 394

F. App'x at 568. Roberson's sentence of 262 months' imprisonment fell within the 262 to 327 months Guidelines' range, as found by Judge Wood, and well below the statutory maximum of 40 years' imprisonment he potentially faced. To be clear, the limited waiver allowed for Roberson to appeal or to otherwise attack his sentence if, "by variance or upward departure, the sentence is higher than the advisory sentencing guideline range *as found by the sentencing court*." Plea Agreement, United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. Nov. 20, 2012), ECF No. 151, p. 11 (emphasis added). Roberson was not sentenced to a term of imprisonment higher than the advisory Guidelines range Chief Judge Wood found to be appropriate, nor was he sentenced above the statutory maximum sentence. It appears that Roberson's claim clearly falls within the limited waiver condition of his plea agreement, and he is not entitled to his requested relief. Thus, this portion of the Government's Motion should be **GRANTED**. However, to the extent Roberson frames these remaining claims as claims of ineffective assistance of counsel, this Court is to consider the relative merits of Roberson's claims.

**B.      Whether Roberson's Ineffective Assistance Claims are Meritorious**

A sentence-appeal waiver will not bar certain Sixth Amendment ineffective assistance of counsel claims from being considered pursuant to Section 2255. When a petitioner alleges an ineffective assistance of counsel claim that challenges the validity or voluntariness of the plea or waiver itself, such as a claim that counsel coerced or misadvised petitioner prior to entry of the plea, then the sentence-appeal waiver will not bar a court from hearing the merits of the claim. See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (noting that despite a sentence-appeal waiver, collateral attack through an ineffective assistance claim is permitted when "the movant challenges the knowing and voluntary nature of the plea"); see also Patel v. United States, 252 F. App'x 970, 971, 974–75 (11th Cir. 2007) (finding that the district court

erred in dismissing, based on a sentence-appeal waiver, petitioner's claim that counsel misadvised him prior to pleading guilty); Cowart v. United States, 139 F. App'x 206, 207–08 (11th Cir. 2005) (holding that a sentence-appeal waiver that only expressly limits a petitioner from collaterally challenging his "sentence" does not bar an ineffective assistance claim that challenges the validity of his plea or the sentence-appeal waiver itself). Therefore, despite the presence of a sentence-appeal waiver, the Court must address the merits of a Section 2255 movant's claim of ineffective assistance if it challenges the validity of the plea or waiver. Id.; see also Soto v. United States, No. 3:08-CR-204-J-34MCR, 2014 WL 2993800, at *3 (M.D. Fla. July 3, 2014).

Roberson maintains McGee was ineffective during the plea negotiation stage because McGee "failed to negotiate a plea agreement that accomodated [sic]" his circumstances. (Doc. 1, p. 5.) Roberson asserts he was in no position to offer the Government meaningful cooperation or substantial assistance, which was evident from the discovery and debriefings with the Government agents. Roberson alleges McGee misadvised him of the consequences of pleading guilty or proceeding to trial and the relative strength of the Government's case. Specifically, Roberson contends McGee advised him that he would be sentenced to 40 years' imprisonment unless he pleaded guilty. Roberson avers McGee told him he was "clearly guilty" of the charged offenses, would be convicted, and would be sentenced based on the entirety of drug quantities alleged in the indictment. (Id. at p. 7.) Finally, Roberson contends his plea was not entered into knowingly and voluntarily because McGee told him to follow a written script during the change of plea hearing and that deviating from that script would leave him facing 40 years' imprisonment. (Id. at p. 8.) Roberson asserts that, but for McGee's ineffective assistance, he would have decided to proceed to trial.

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686). "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).

A defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. Id.

In this case, Roberson swore to Chief Judge Wood that no one had coerced him into pleading guilty or promised him anything, other than what was outlined in the plea agreement, if he pled guilty. Change of Plea Hr'g Tr., United States v. Roberson, et al., 5:12-cr-9 (S.D. Ga. Apr. 21, 2014), ECF No. 197, pp. 22, 24. Roberson testified to these facts under oath before Chief Judge Wood, and the presumption of veracity of his statements during his Rule 11 and sentencing hearings applies. Roberson has offered nothing more than his bare assertions that

McGee provided ineffective assistance of counsel and that ineffective assistance rendered Roberson's guilty plea unknowing and involuntary. To the extent these portions of Roberson's Section 2255 Motion survive the collateral appeal waiver contained in his plea agreement, these portions should be **DENIED**.

## III. Leave to Appeal *In Forma Pauperis* and Certificate of Appealability

The Court should also deny Roberson leave to appeal *in forma pauperis*, and he should be denied a Certificate of Appealability ("COA"). Though Roberson has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); <u>see also</u> Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding in forma pauperis is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. <u>Busch v. Cty. of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an in forma pauperis action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the parties' pleadings and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Roberson a COA, Roberson is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an

appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**.

CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Government's Motion to Dismiss be **GRANTED**, Roberson's Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255, be **DISMISSED** in part and **DENIED** in part, and that this case be **CLOSED**. I also **RECOMMEND** that Roberson be **DENIED** a Certificate of Appealability and be **DENIED** *in forma pauperis* status on appeal.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made

only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Roberson and the Government.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of December, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA